[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMDORANDUM OF DECISION
The plaintiff has filed for a dissolution of his marriage with the defendant. Based upon the evidence presented at a contested hearing in this matter, the court makes the following findings. CT Page 13407
The plaintiff and the defendant married on June 9, 1990 in Seymour, Connecticut. The marriage was the plaintiff's third marriage and the defendant's first marriage. The parties have two minor children from their marriage, Seth, age nine, and Gabe, age six. The plaintiff also has one minor child from a prior union, Ryan, age sixteen. Ryan lived with the parties throughout their marriage.
The plaintiff is thirty-seven years old and in generally good health. She does suffer from rheumatoid arthritis and the bones in her right hand are fused resulting in an inability to bend her wrist. The plaintiff is a high school graduate and a graduate of the University of Bridgeport. She served two and one-half years in the United States Marine Corps.
The plaintiff taught herself sewing and furniture reupholstery. She currently provides those services on a part-time basis and earns $90 net income weekly. Previously, the plaintiff worked as a secretary at the State of Connecticut Department of Rehabilitative Services earning approximately $25,000 annually she was employed there for approximately six years until 1992 when she resigned at the birth of the parties' first child, Seth. The parties agreed that the plaintiff would remain at home to care for the children.
From 1992 through the present, the plaintiff has been at home caring for the children. Ryan suffers from attention deficit disorder and a learning disability while Seth also has a learning disability. The plaintiff currently plans to return to school and acquire a master's degree in education. She anticipates attending a two year master's degree program at the conclusion of which she hopes to assume a teaching career.
The plaintiff concedes that, in light of her imminent divorce and the fact that her children are now in school full-time, she should be expected to obtain employment outside the home. The plaintiff recently obtained, but did not complete, an application from a fabric store which was hiring a salesperson at $10 per hour. Considering her experience sewing, it is reasonable to expect the plaintiff to obtain such employment. Based on the evidence presented, I find that the plaintiff has a capacity to work 35 hours per week at $10 per hour which results in a net weekly income to her of $301.
The defendant is forty-eight years old and in excellent health. He served twenty years in the United States Marine Corps, retiring in 1991. The plaintiff currently receives $310 weekly from a military pension. He is a high school graduate and received some college credits through his military service. CT Page 13408
In 1993, the defendant began work with the United States Postal Service. He is presently employed there as a supervisor for customer service. His regular gross weekly wage from the U.S. Postal Service is $861. The defendant also works considerable overtime each week at the post office. During the course of the marriage, he worked ten to twenty hours of overtime each week. The precise number of overtime hours worked varied from week to week. Under the Child Support and Arrearage Guidelines (guidelines),[1] the court is to use, in determining child support, hourly wages for regular, overtime, and additional employment up to a maximum of 52 total paid hours per week. Regs., Conn. State Agencies § 46b-215a-1 (11) (A) (ii). In light of the defendant's work history during his marriage, the defendant has an ability to work 40 regular hours each week plus an additional 12 hours of overtime. The defendant receives $21.48 per hour for each hour of regular and overtime work. Therefore, the defendant has a gross earning capacity from his employment at the United States Postal Service of $1117 weekly.
The defendant's income from his employment at the United States Postal Service together with the income from his military pension result in a total net weekly income of $967.[2]
Beginning in the spring of 2000, the defendant added a part-time job driving a school bus. He did so for two different bus companies, working a total of approximately ten hours per week during the academic year and earning an average of $110 weekly. The defendant does not expect to continue driving a school bus during the academic year commencing in September 2001 because it will interfere with his ability to visit his children.
The plaintiff and the defendant are joint owners of real property located at 43 Clay Road, Bethany, Connecticut. The property was purchased in 1993 in considerable disrepair. The defendant extensively renovated the property during the course of the marriage. The present fair market value of the property is $210,000. The property is encumbered by a mortgage with a balance owing of $147,196.
The plaintiff and defendant also share a savings and a checking account at Webster Bank with a total balance of $400. The parties own two motor vehicles, a 1995 Oldsmobile valued at $9,625 and a 1985 GMC truck valued at $4,000. The defendant owns a 1981 Yamaha motorcycle worth $300 and a 1987 Wellcraft boat worth $6,000.
The plaintiff possesses an Aetna IRA valued at $1,942 and a Morgan Stanley Dean Witter IRA valued at $5,197. The plaintiff also is the custodian of three Dean Witter accounts and two Webster Bank accounts that she holds for her children, Ryan, Seth and Gabe. CT Page 13409
The plaintiff's father died on June 16, 2001. His estate is in the process of being settled. The plaintiff holds a one-third interest in her father's estate. The assets of the estate include real estate in Seymour, Connecticut with an estimated fair market value of $130,000, two annuities with a total value of $130,000, and a life insurance policy valued at $2,700. The liabilities known at the time of trial total $15,541 together with probate costs and administrative expenses. The plaintiff also had a joint savings and a checking account at First Union Bank in joint name with her father with a total balance of approximately $1,115.
The defendant has solely in his name funds in a federal thrift savings plan which total $61,000. The defendant contends that this sum was accumulated entirely through the deposit of funds from his military pension. The evidence presented does not support that assertion. The defendant's 2001 pay stubs and the defendant's W-2 Wage and Tax Statements for 1998, 1999 and 2000 for his employment with the postal service all show deposits directly into the thrift savings plan.
The defendant also possesses a significant interest in the retirement plan available to him through his employment with the United States Postal Service. He is not yet vested in that plan. At trial, the parties stipulated that the court may reserve jurisdiction to determine once the pension benefits have vested and matured the proper share to which each party is entitled. See Krafick v. Krafick, 234 Conn. 783, 803 (1995). Since the defendant's interest in the pension is not yet vested[3] and neither party provided any evidence establishing the present value of the defendant's interest, the "reserved jurisdiction" method of distributing the pension benefits is the most appropriate one under the circumstances. See id., 804.
The parties share a joint liability in the amount of $13,686 in the form of a loan from the Navy Federal Credit Union. The credit union loan was used for a variety of purposes most of which benefitted both parties, including the consolidation of credit card debt, payment of an automobile loan, and procurement of a loan to purchase a boat.
Both parties contributed to the breakdown of the marriage. During the marriage, the defendant frequently worked six to seven days a week, ten hours per day. Due to the defendant's exhausting work schedule, the parties' relationship flagged. The parties' tumultuous relationship with the plaintiff's child, Ryan, also contributed to the disintegration of their marriage. I find that the marriage has broken down irretrievably but that neither party is singularly at fault for the breakdown. CT Page 13410
The parties reached an agreement as to custody and visitation with respect to their two children. Pursuant to that agreement, the parties are awarded joint legal custody of the children, primary physical residence shall be with the plaintiff. Through a written agreement dated August 29, 2001, the parties arranged a schedule of visitation.
In determining the orders contained herein, I have carefully considered all the relevant statutory criteria, including those in General Statutes § 46b-81 as they relate to the assignment of property, § 46b-82
as they relate to the award of alimony, and § 46b-84 and the child support guidelines as they relate to the award of child support. The court enters the following orders:
1. The marriage is ordered dissolved on the grounds of irretrievable breakdown.
2. In accordance with the agreement of the parties, the parties are awarded joint legal custody of the minor children, Seth and Gabe, with primary physical residence of the children with the plaintiff. The written agreement between the parties dated August 29, 2001 setting forth the defendant's rights with respect to visitation is approved and entered as orders of the court.
3. In accordance with the child support guidelines, the defendant is ordered to pay to the plaintiff $274 weekly in child support.[4] The plaintiff shall be responsible for the first one hundred dollars of any unreimbursed medical expenses for each minor child for each calendar year. The plaintiff shall pay 44% of any unreimbursed medical expenses for each minor child that exceed one hundred dollars per calendar year and the defendant shall pay 56% of any such unreimbursed medical expenses. The defendant shall maintain medical insurance for both minor children for so long as it is available at reasonable cost through his employer. The plaintiff shall pay 44% of any qualified child care costs for each minor child and the defendant shall pay 56% of any such costs. The defendant shall maintain his existing life insurance policy naming the children as beneficiaries for so long as he has an obligation to provide child support.
4. The defendant shall pay to the plaintiff periodic alimony in the amount of $200 weekly. Alimony shall terminate upon the earliest of the following events: death of either party, remanage or cohabitation by the plaintiff, or September 1, 2004. September 1, 2004 was chosen as the date for the termination of alimony based upon the expectation that the plaintiff will pursue her plan to obtain a master's degree and that she will be able to commence employment as a teacher beginning with the September 1, 2004 school year. CT Page 13411
5. The plaintiff is awarded sole ownership of the marital home at 43 Clay Road, Bethany, Connecticut. The defendant shall convey his interest in the property to the plaintiff by quitclaim deed within thirty days of the date of this decision. The plaintiff shall be solely responsible for paying the mortgage, taxes, and liens, if any, on the property. The plaintiff shall hold the defendant harmless and indemnify the defendant with respect to any and all mortgages, liens and encumbrances on the property. The plaintiff shall obtain, if possible, a refinancing of the current mortgage so that the defendant is no longer a mortgagor.
6. The plaintiff shall retain ownership of her Aetna IRA valued at $1,942 and Morgan Stanley Dean Witter IRA valued at $5,197. The plaintiff shall also remain the custodian of the Dean Witter accounts and Webster Bank accounts that she holds for her children.
7. The plaintiff is awarded sole ownership of the 1995 Oldsmobile. The defendant is awarded sole ownership of the 1985 GMC truck, the 1981 Yamaha motorcycle and the 1987 Wellcraft boat. The parties shall take whatever steps are necessary to convey title of the appropriate vehicle to the other.
8. The plaintiff shall retain her entire interest in the estate of her deceased father.
9. The defendant shall retain his entire interest in the funds in his federal thrift savings plan.
10. The parties shall divide equally the balances in the savings and checking accounts at Webster Bank.
11. The court reserves jurisdiction to determine once the defendant's pension benefits with the United States Postal Service have vested and matured the proper share, if any, to which each party is entitled.
12. The defendant shall cooperate with the plaintiff so that she may exercise, at her election, her rights under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), to the extent such rights are available to her, to maintain health insurance at her expense under the defendant's health insurance plan.
13. The plaintiff shall be solely responsible for payment of the J.C. Penney and Filene's liabilities listed on her financial affidavit. The defendant shall be solely responsible for payment of the balance of the joint American Express credit card. CT Page 13412
14. The parties shall be jointly responsible for the Navy Federal Credit Union loan. Each shall pay one-half of the outstanding balance of $13,686 and shall hold the other harmless with respect to said amount. The plaintiff shall pay her one-half share in full within thirty days of receiving sufficient funds to do so from her inheritance from her father's estate.
15. The plaintiff shall be able to take for tax purposes the child dependency exemption for Seth and the defendant shall be able to take for tax purposes the child dependency exemption for Gabe.
16. Each of the parties shall be responsible for the payment of their respective attorney's fees.
17. The plaintiff's former name of Jacquelyn Tucker is hereby restored.
BY THE COURT
Judge Jon M. Alander